THOMAS POTTER

*v.*

MORRIS & CUMMINGS DREDGING COMPANY et al.

[Argued March 29th, 1900. Decided May 10th, 1900. Filed May 12th, 1900.]

1. A number of persons, firms and corporations engaged in the business of dredging entered into a voluntary association, the object of which, as stated in its articles, was to designate and maintain a uniform scale of prices for dredging and to equitably distribute work; officers were to be elected annually, but the chief powers were vested in an " adjuster ; " members might bid on work or make contracts, provided they bid according to the association

Potter v. Morris & Cummings Dredging Co.

rules, but if a member secured more than its fair proportion of the work, the adjuster might assign the work secured to another member. Each member retained its own plant—there was no central plant—and the association partook of no gains or losses.—*Held*, that such association was not a partnership so as to entitle a member thereof, on the death of another member, to dissolution and a distribution of its assets.

2. Where a number of persons, firms and corporations engaged in the business of dredging have entered into an association to maintain prices for dredging and to equitably distribute work, the conduct of which was put under the control of an adjuster, such adjuster is not entitled to personal relief from the fact that he had not received his just share of the work. He could not complain, as the distribution was entirely within his own hands.

On demurrer to bill.

*Mr. Charles D. Thompson*, for the demurrant.

*Mr. George T. Werts*, for the complainant.

STEVENS, V. C.

The bill, which is demurred to, prays for a decree dissolving, and distributing the assets of, a voluntary association known as "The Dredge Owners' Association of New York Harbor." The prayer is founded upon the assumption that the association is a partnership, and that by the death of one of its members and the bankruptcy of another the complainant has become entitled to the relief sought.

I will consider two questions—*first*, is the association a partnership? *second*, if it is not, is the complainant, on the facts stated, entitled to any relief short of dissolution? 

*First.* Is the association a partnership? On April 20th, 1894, a number of persons, firms and corporations engaged in the business of dredgers, formed an association with the above name and adopted a constitution, by-laws and rules.

Article 2 of the constitution specifies that " its object shall be to designate and maintain a uniform scale of prices for dredging in that [New York] harbor and vicinity, and to equitably distribute work." With a view to this object, it is provided that

the association shall elect, annually, a president, a vice-president, a treasurer and an adjuster, and that weekly meetings shall be held. The powers of the association are chiefly concentrated in the "adjuster." Rule 2 provides, in substance, that members must not bid on work and must not make contracts without the express authority of this last-mentioned officer. If the case is urgent they may, indeed, name a "spot price" not less than the existing schedule price fixed by the association, but they must at once report to the adjuster, who may award the work to another member. Rule 3 provides "that each member shall be entitled to a certain percentage of the work done; which percentage is to be figured on the basis of days' work." By rule 5, the adjuster is directed to equalize the account of members and to balance the same on his books. The objects of the association are, therefore, threefold—*first*, to fix prices; *second*, to prevent genuine competition in bidding among the members; *third*, to assign to each member his proper share or proportion of the aggregate of the contracts which may be entered into severally by the members, without, however, compelling any member to do any work which he may not have contracted to do, or which he may not desire to do. The basis of the apportionment is "days' work," which means days actually worked by the machines of the several contractors; the capacity of the machines being, roughly speaking, gauged by their power.

The scheme, as I understand it (and I speak only from the bill and the schedules attached thereto), is to allow the several contractors, who are members, to bid for such work as they please, and to take the profits of it. But with this limitation: the members must bid according to the rules of the association, and if he is getting more than his fair share of *all* the work done, the adjuster may refuse his assent to the award of any particular contract to him, or may, if he have named a "spot price," award the work to another member.

No attempt is made in the constitution, by-laws, or rules to create a common plant or a central control of the work undertaken, or to authorize bids by the association as such. Each

member retains his own plant, hires his own men to operate it, and the contract having been awarded to him with the approval of the adjuster, takes the profits and bears the losses which result from its execution. Neither the association nor any officer of it has, after the award, the least authority to interfere. If the job is a profitable one, the association derives no benefit from it; if a losing one, no loss.

Such an arrangement does not appear to me to come within any definition of partnership to be found in the text-books or in the adjudged cases. A partnership, says Mr. Justice Depue, in *Wild* v. *Davenport, 19 Vr. 130*, is usually defined to be " a voluntary contract between competent persons to place their money, effects, labor and skill or some or all of them in lawful commerce or business, upon the understanding that there shall be a communion of the profits thereof between them." In the case at bar there is no attempt to unite either the property, labor or skill of the several members, and there is absolutely no communion of profits. Community of capital may not be essential (*Pooley* v. *Driver, 5 Ch. Div. 472*), but community of interest in profits is. *1 Lind. Part. *7*. Here there is no such community. The business of the members is dredging, and each member dredges on his own account and takes to himself alone, as I have said, such profit as he derives from the contracts that he is permitted to make. The association itself has no plant, does no work and makes no profits. Its sole province is to maintain prices and to designate the members to whom the work shall go.

Members may be assessed for the expenses of the association. There is a vague provision for " extra assessment," in article 3 of the constitution, and it is said, in rule 5, that in equalizing the account of members the adjuster " may either apportion any work to members in arrears or charge those in excess such sum in money as he may determine to be due those in arrears." What this last provision means it is difficult to say. The expression " members in arrears " is averred to mean members who have done less than their proportionate amount of work.

The appropriate relief to be afforded to them is to assign them more if they desire it. How any sum of money can be *due* those in arrears does not appear. No rule for ascertaining it is to be found. So far as the bill shows, its ascertainment is impossible, except by the arbitrary fiat of the adjuster. Should the adjuster attempt to name a sum as "due" (and no such attempt is alleged), it is plain that his determination would not be an apportionment of profits according to any rule of the association, but rather a penalty exacted by him because of his own default in not properly regulating the award of contracts among the members on the basis of days' work.

I am therefore of opinion that the association is not a partnership, and that it cannot be wound up on that theory. The bill alleges no other ground upon which to proceed against it in this way.

*Second.* Is the complainant, on the facts alleged, entitled to any species of relief against the defendants short of dissolution? It must be borne in mind that he is seeking it against the demurrant, not for the benefit of the association, but for his own benefit. The only conceivable ground for a claim to personal relief is that there has not been awarded to him as much work as he is entitled to. But the bill alleges that he is himself the adjuster. The inference from the facts stated is that he has been the adjuster from the beginning. If, therefore, he has not had his fair share of the work, he alone is to blame for it, and the remedy is obvious and entirely within his own hands.

The defendant assigns as another ground of demurrer that the purposes of the association are contrary to public policy and null and void, and that, therefore, the complainant is not entitled to relief against it. It is unnecessary to consider this objection in view of my conclusion on the other points.